UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SINCERE SMITH,

                                                     **Plaintiff,**

  vs.                                                                      9:23-CV-533 (MAD/ML)

MOLLY ANNARINO, *C.O.*, and T. BORK, *C.O.*,

                                                     **Defendants.**
_____

APPEARANCES:                                      OF COUNSEL:

**OFFICE OF DAUDI JUSTIN**                 **DAUDI JUSTIN, ESQ.**
P.O. Box 8601
New York, New York 10116
Attorneys for Plaintiff

**LAMARCHE SAFRANKO LAW PLLC**    **ANDREW R. SAFRANKO, ESQ.**
987 New Loudon Road                    **JOSHUA R. FRIEDMAN, ESQ.**
Cohoes, New York 12047                **LILY G. KILLAR, ESQ.**
Attorneys for Defendant Annarino      **NICHOLAS J. EVANOVICH, ESQ.**

**OFFICE OF THE NEW YORK**             **OLIVIA R. COX, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendant Bork

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

      Plaintiff commenced this action pursuant to 42 U.S.C. § 1983 asserting claims arising out of his confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). *See* Dkt. No. 1. Plaintiff subsequently filed an amended complaint and, following an initial review, Defendants Annarino and Bork were directed to file a response to Plaintiff's Eighth Amendment excessive force claim. *See* Dkt. No. 7.

Currently before the Court are the parties' cross motions for summary judgment. *See* Dkt. Nos. 59, 77 & 82.[1]

## II. BACKGROUND

On May 12, 2022, at approximately 8:50 a.m., Defendants Bork and Annarino were involved in a documented use of force on Plaintiff that took place in front of Classroom #1 in Building 125 at Mid-State Correctional Facility ("Mid-State C.F."). *See* Dkt. No. 83-1 at ¶ 7; Dkt. No. 86-2 at ¶ 2. On the morning of May 12, 2022, Plaintiff was escorted to Classroom #1 and was assigned a seat in the classroom for programming. *See* Dkt. No. 83-1 at ¶ 8. Defendants contend that Plaintiff subsequently began being disruptive. *See id.* at ¶ 9; Dkt. No. 86-2 at ¶ 3.[2] According to Defendants, Plaintiff refused two direct orders to stop being disruptive and was instructed that if he continued he would be escorted back to his cell and would be unable to participate in programming. *See* Dkt. No. 83-1 at ¶ 10; Dkt. No. 86-2 at ¶ 4.

At this point, Sergeant Short was called to report to Classroom #1. *See* Dkt. No. 83-1 at ¶ 11. Plaintiff refused Sergeant Short's first direct order to return to his cell but eventually complied. *See id.* at ¶ 12. Accordingly, Defendant Bork applied mechanical restraints to Plaintiff's wrists and began to escort him back to his cell. *See id.* at ¶ 13. According to Defendants, upon exiting Classroom #1 with Plaintiff in mechanical restraints, Plaintiff turned towards Defendant Annarino, who was standing outside the classroom in the hallway, and forcefully spit in her face. *See* Dkt. No. 59-1 at ¶ 14; Dkt. No. 82-3 at ¶ 9. Plaintiff denies the allegation that he spit in Defendant Annarino's face and instead contends that he "merely spit in her direction" while acknowledging "that the spit may have landed on Annarino's face." Dkt. No.

---

[1] Although Plaintiff commenced this action *pro se*, he is now represented by counsel.

[2] The Court notes that Plaintiff disputes that he was being "disruptive," but admits that "Defendant Annarino believed he was being disruptive." Dkt. No. 83-1 at ¶ 9.

2

83-1 at ¶ 14.

Defendants contend that, at this point, force became necessary to prevent Plaintiff from continuing to spit at staff. *See* Dkt. No. 83-1 at ¶ 15. Plaintiff, however, argues that no force was necessary because he "had already become compliant by the time Defendant Bork used force." *Id.* Defendant Bork used both hands to grab Plaintiff by the back of his shirt near the shoulder to force Plaintiff to the ground face first. *See id.* at ¶ 16. During the process of being brought to the ground, Plaintiff's head struck the wall. *See* Dkt. No. 86-2 at ¶ 13. Defendant Bork then used additional body holds to ensure Plaintiff's compliance. *See* Dkt. No. 83-1 at ¶ 18. While this was happening, "Defendant Annarino ran around Plaintiff and Defendant Bork who were on the floor and struck Plaintiff in the hip with her knee and several times in the head with closed fists." *Id.* at ¶ 19. Defendant Bork claims that, while this was happening, he attempted to shield Plaintiff from Defendant Annarino by positioning his arm between Plaintiff and Defendant Annarino. *See* Dkt. No. 59-1 at ¶ 20. Plaintiff, however, "disputes this fact as Defendant Bork held Plaintiff down for Annarino's looming attack." Dkt. No. 83-1 at ¶ 20. Officer Pope then pulled Defendant Annarino away from Plaintiff. *See id.* at ¶ 21.

At this point, Defendant Bork then assisted Plaintiff to his feet and escorted him, with the assistance of Officer Redner, to the first floor holding pen to be examined by medical staff. *See id.* at ¶ 22.[3] According to the medical records, as a result of the use of force, Plaintiff suffered two small abrasions on his body: one to his left forehead and one to his left shoulder. *See* Dkt. No. 59-5 at 19. Plaintiff received medical care in the form of cleaning and applying bacitracin to the 1 mm open area on his left forehead. *See id.* Plaintiff refused treatment in the form of an ultrasound and medication when offered by medical staff following the incident. *See id.* at 19,

---

[3] This entire use-of-force incident was captured in security video footage which has been attached as an exhibit to Defendant Bork's motion for summary judgment. *See* Dkt. No. 59-8.

35-36.

Defendant Bork issued Plaintiff a misbehavior report for the following rule violations: 104.11 violent conduct, 106.10 refusing a direct order, 107.10 interference, and 118.22 unhygienic acts. *See* Dkt. No. 86-2 at ¶ 16. Plaintiff was found guilty of all charges in the misbehavior report. *See id.* at ¶ 17.

### III. DISCUSSION

**A.     Standard of Review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994).[4] When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37. Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986). In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson*, 477 U.S. at 255). Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute. *See Anderson*, 477 U.S. at 258.

The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden

---

[4] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case. *See id.* at 325. Once the movant meets this initial burden, the nonmoving party must demonstrate that there is a genuine unresolved issue for trial. *See* Fed. R. Civ. P. 56(e). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

B.  **Eighth Amendment Excessive Force**

Inmates enjoy Eighth Amendment protection against the use of excessive force and may recover damages for its violation under 42 U.S.C. § 1983. *See Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992). The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain." *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).

To bring a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements. *See Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999). The objective element is "responsive to contemporary standards of decency" and requires a showing "that the injury actually inflicted [is] sufficiently serious to warrant Eighth Amendment protection." *Hudson*, 503 U.S. at 8; *see also Blyden*, 186 F.3d at 262. "[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Sims*, 230 F.3d at 22. However, "the malicious use of force to cause harm[ ] constitute[s] [an] Eighth Amendment violation *per se*" regardless of the seriousness of the injuries. *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9). "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10. "The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." *Id.* at 7.

5

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." *Sims*, 230 F.3d at 21. Thus, the key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically [to] cause[ ] harm." *Hudson*, 503 U.S. at 7; *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (observing that the Supreme Court has emphasized that the nature of the force applied is the "core judicial inquiry" in excessive force cases — "not whether a certain quantum of injury was sustained"). In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider:

> the extent of the injury and the mental state of the defendant[;] ... the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.

*Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003).

### 1. Defendant Bork

In his motion, Defendant Bork contends that Plaintiff has failed to establish that Defendant Bork's use of force was objectively, sufficiently serious as a matter of law. *See* Dkt. No. 59-9 at 6-9. Specifically, Defendant Bork contends that the evidence establishes that he brought Plaintiff to the ground after he spit at a corrections officer in order to maintain the safety and security at the facility. *See id.* at 8. Further, Defendant Bork notes that Plaintiff testified that Defendant Bork pushed him into the wall from the back and then "jumped" on top of him when he was on the floor. *See id.* As such, Defendant Bork contends that his use of force and the injuries Plaintiff suffered were *de minimis*. *See id.* Defendant Bork further contends that the evidence establishes that he did not possess the necessary "wanton" state of mind required to establish the subjective component of this claim. *See id.* at 9-11.

In the present matter, the Court finds that questions of fact preclude granting Defendant Bork's motion for summary judgment. It is undisputed that, while Defendant Bork was attempting to bring Plaintiff to the ground, Plaintiff's head struck the wall. *See* Dkt. No. 86-2 at ¶ 13. Defendant Bork contends that the video footage clearly shows that his actions were not wanton and that "[w]hile Plaintiff did hit his head against the wall, it is evident from the security footage that it was due to their body positioning in the hallway and was in no way intentional." Dkt. No. 59-9 at 10. Having reviewed the security footage, however, the Court is unable to conclude that Defendant Bork did not intentionally push Plaintiff into the wall. In the video, Defendant Bork is seen charging at Plaintiff in the hallway and pushing Plaintiff forcefully from behind, causing Plaintiff to strike his head into a wall that was approximately six-to-seven feet from where Defendant Bork first contacted Plaintiff. While Defendant Bork contends that he did not intend to push Plaintiff head-first into the wall, the facts before the Court would permit a reasonable jury to conclude that Defendant Bork acted intentionally and that Plaintiff was subjected to excessive force. *See Bradshaw v. Uhler*, No. 9:21-cv-901, 2023 WL 5795937, *21 (N.D.N.Y. July 20, 2023) (denying the defendant's motion for summary judgment on the plaintiff's excessive force claim where the plaintiff alleged that the defendant pushed the plaintiff in the back causing his upper torso to hit a wall, despite the fact that the plaintiff suffered only minor injuries). Moreover, Plaintiff has submitted evidence demonstrating that he continued to have pain for the month following the incident, continually complaining of pain in his shoulder and headaches. *See, e.g.*, Dkt. No. 77-10 at 2; Dkt. No. 77-11 at 2. This is sufficient to demonstrate more than a *de minimis* injury. Similarly, viewing the evidence in Defendant Bork's favor, questions of fact preclude the Court from granting Plaintiff's motion for summary judgment. A reasonable jury could conclude that Defendant Bork used force in a good faith effort to protect Defendant Annarino and that the force used was proportionate to the threat posed by

7

Plaintiff.  *See Scott*, 344 F.3d at 291.

Accordingly, the Court denies Defendant Bork's motion for summary judgment.  For these same reasons, Plaintiff's motion for summary judgment is denied as to Defendant Bork.

### 2. *Defendant Annarino*

In his motion, Plaintiff contends that he is entitled to summary judgment as to his claim against Defendant Annarino because he claims that the undisputed facts establish that her use of force was not designed to restore discipline or order at the facility, or to protect staff or other inmates from harm since he was already compliant when she attacked him.  *See* Dkt. No. 77-3 at 11-12.  Rather, Plaintiff contends that the evidence establishes that Defendant Annarino's use of force was designed to punish Plaintiff for spitting in her direction.  *See id.* at 12.  Moreover, Plaintiff argues that even if force was required, the force employed by Defendant Annarino was not proportionate to any perceived need for force.  *See id.*  In response and in support of her own motion for summary judgment, Defendant Annarino contends that she is entitled to summary judgment because the force applied was *de minimis* and because it was applied in an effort to maintain and restore discipline and not maliciously and sadistically.  *See* Dkt. No. 82-4 at 6-9.

In the present matter, the Court finds that neither side is entitled to summary judgment as to this claim.  As to Plaintiff's motion, although Defendant Bork had taken Plaintiff to the ground and was on top of him by the time Defendant Annarino intervened, it is unclear whether further assistance was needed to restore order and gain Plaintiff's compliance.  Upon reviewing the video, a reasonable juror could conclude that Plaintiff was still failing to comply with orders from the corrections staff when Defendant Annarino intervened, thereby making her use of some force reasonable.  Conversely, a reasonable juror viewing this video could conclude that no additional intervention was necessary or that, while Defendant Bork needed some assistance in regaining Plaintiff's compliance, the amount of force employed by Defendant Annarino was excessive and

employed solely for purposes of causing harm. This determination is supported by the fact that Plaintiff had just spit either in Defendant Annarino's direction or in her face and, when Defendant Annarino was eventually pulled off of Plaintiff by a fellow corrections officer, she can be heard yelling "fucking cocksucker" at Plaintiff. *See* Dkt. No. 59-4 at 00:29-00:32. Moreover, the video depicts Defendant Annarino repeatedly punching Plaintiff in the head while Defendant Bork was already laying on top of Plaintiff.

Accordingly, the Court finds that questions of fact preclude the Court from granting either Plaintiff's or Defendant Annarino's motion for summary judgment.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, the Court hereby

**ORDERS** that the parties' motions for summary judgment (Dkt. Nos. 59, 77 & 82) are **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 16, 2025
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge